IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY KOZLOWSKI, | : Civil No.  1:24-CV-450 |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| MICHELLE KING, Acting | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant | : |

## MEMORANDUM OPINION

## I.    Introduction

Ashley Kozlowski filed a Title II application for a period of disability and disability insurance benefits on October 14, 2021. (Tr. 28). Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Kozlowski was not disabled from her alleged onset date of disability of April 24, 2021, through April 13, 2023, the date of the ALJ's decision. (Tr. 40).

---

[1] Michelle King became the acting Commissioner of Social Security on January 20, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Michelle King is substituted as the defendant in this suit.

Kozlowski now appeals that decision, arguing the ALJ's decision is not supported by substantial evidence. (Doc. 14). After a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

On October 14, 2021, Kozlowski applied for disability insurance benefits, citing an array of physical and mental impairments, including, *inter alia*, degenerative disc disease, degenerative joint disease, fibromyalgia, obesity, sleep apnea, major depressive disorder, Hashimoto's hypothyroidism, thyroid nodule, hypertension, chronic fatigue syndrome, chronic venous hypertension of both lower extremities, subcutaneous mass, urinary incontinence, mitral valve regurgitation, and congenital absence of thenar muscles. (Tr. 31-32). Kozlowski was 46 years old at the time of the alleged onset of disability, had at least a high

school education, and had past employment as an administrative clerk from 2014 to 2019. (Tr. 240, 245).

With respect to these alleged impairments the record revealed the following: On May 11, 2020, Kozlowski received a lumbar x-ray at Quantum Imaging & Therapeutic Associates, Inc. ("Quantum") (Tr. 358). Dr. Jean Dykstra recorded that the imaging showed multilevel degenerative changes of the lumbar spine and mild arthrosis of the bilateral hips. (*Id.*). In August of 2020, Kozlowski consulted at University of Pittsburgh Medical Center ("UPMC") with Dr. Parul Kakaria, an endocrinologist, who recorded that while Kozlowski reported muscle pain, weakness, and fatigue, the examination revealed normal findings. (Tr. 397-400).

On January 19, 2021, Kozlowski received an orthopedic evaluation from Dr. Tyson Maugle at Orthopedic Institute of Pennsylvania. ("OIP") (Tr. 370). Dr. Maugle noted that Kozlowski had pain radiating into her left buttock and both hips, especially the left, rated her pain as 6-7 out of 10, and reported that the pain worsened with walking, sitting, or standing but that rest brought relief. (*Id.*). Dr. Maugle's examination

3

revealed tenderness with palpation of the lumbar paraspinal musculature, a positive straight leg raising test, and limited lumbar extension. (*Id.*). Dr. Maugle noted Kozlowski's lumbar spondylosis and left lower extremity lumbar radiculopathy and ordered a lumbar MRI. (*Id.*). The MRI revealed mild L1-L2 and L4-L5 spondylosis, L4-L5 posterior annular fissure, mild canal and foraminal stenosis, severe L5-S1 facet arthrosis, but showed no evidence of disc herniation or nerve impingement. (Tr. 360).

Kozlowski had a psychological consultation with Dr. Frank Munoz on February 5, 2021. (Tr. 533). He diagnosed her with chronic, severe major depressive disorder. (Tr. 535). Dr. Munoz prescribed duloxetine, and fluoxetine. (Tr. 535-36). At a March 22, 2021 follow up Dr. Munoz suggested adjusting her medication, which Kozlowski declined. (Tr. 538). He noted she would continue to use medical marijuana to manage pain and insomnia. (*Id.*).

Kozlowski returned to OIP on March 9, 2021, complaining of pain in her left buttock and hip. (Tr. 374). Dr. Maugle noted that Tylenol, ibuprofen, and medical marijuana provided some incomplete relief for

4

this pain. (*Id.*). Kozlowski continued to show some tenderness with palpation of the lumbar paraspinal musculature and limited lumbar extension. (*Id.*) Dr. Maugle referred Kozlowski for epidural injections. (Tr. 375). She received two such injections at OIP from Dr. William Rolle Jr., one on April 6 and the other on April 21 of 2021. (Tr. 378, 380).

Between those injections, Kozlowski returned to Dr. Munoz for a consultation on April 20, 2021. (Tr. 539). He noted that her mood was in a better range and that Kozlowski was "feeling better." (*Id.*). Kozlowski saw Dr. Munoz again on May 19, 2021, and he noted that mood had been a little better but that she continued to struggle with guilt related to not working. (*Id.*). She consulted with Dr. Munoz again on June 16, 2021, at which time her mood was largely "unchanged." (Tr. 543). Kozlowski reported she continued to have feelings of guilt but was sleeping soundly for nine hours a night. (*Id.*).

On September 27, 2021, Kozlowski visited UPMC Harrisburg and complained of severe muscle pain and weakness, myalgias, and fatigue. (Tr. 397). Dr. Kakaria diagnosed hypothyroidism, a history of thyroid nodule, and muscle pain. (Tr. 399-400). Dr. Kakaria prescribed

Cymbalta and Snynthroid and recommended Kozlowski follow up with a rheumatologist. (Tr. 400). On September 28, Kozlowski received x-rays at Quantum, pursuant to pain in her left knee and neck. (Tr. 657-58). Certified Registered Nurse Practitioner ("CRNP") Gina Koons recorded that the x-rays showed degenerative changes in Kozlowski's C4-C5 and C5-C6 vertebrae, and medial and lateral compartmental chondrocalcinosis of the knee. (*Id.*). Kozlowski complained of joint pain but stated she was otherwise "okay." (Tr. 618).

Kozlowski consulted at UPMC Rheumatology on December 6, 2021. (Tr. 410). CRNP Stephanie Spahr noted Kozlowski reported constant muscle pain and joint pain. (*Id.*). CRNP Spahr also noted Kozlowski had bilateral hip tenderness as well as lumbar and cervical tenderness, but a normal range of motion. (Tr. 411).

On January 27, 2022, Kozlowski had an examination at the Center for Vein Restoration ("CVR"). (Tr. 460). Dr. David Calcagno noted Kozlowski was five feet, seven inches tall, weighed 260 pounds, and had a BMI of 40.72. (Tr. 461). Dr. Calcagno also noted veinous insufficiency in Kozlowski's left leg but was unable to locate a venous cause for her

signs and symptoms. (Tr. 462). He recommended "only conservative measures" for treatment, such as using medical grade compression stockings, elevating the leg, daily exercise, weight loss, and over the counter analgesics for pain management. (*Id.*).

Pursuant to her application for benefits, Kozlowski underwent an internal medical consultative examination and a psychological consultative examination on February 3, 2022. (Tr. 466). Dr. Ahmed Kneifati performed the internal medical examination and diagnosed Kozlowski with hypertension, heart disease, mitral valve disease, shortness of breath, head injury, short-term and long-term memory loss, congenital absence of thenar muscle in both hands, fibromyalgia, degenerative disc disease of the lumbar spine, and spinal stenosis L4/L5 radicular pain bilateral. (Tr. 469). Stacy Trogner, Psy. D. performed the psychological examination and diagnosed Kozlowski with generalized anxiety disorder, unspecified depressive disorder, unspecified trauma and stressor related disorder, cocaine use disorder in sustained remission, and borderline personality disorder. (Tr. 487).

7

Kozlowski filled out a function report on May 19, 2022. (Tr. 308-16). She stated that her ability to work was limited by her hand condition, fatigue, her head-to-toe pain (including specific back, leg, ankle, neck pain, elbow, and shoulder pains, affecting her abilities to grip, sit, stand, walk, lift, carry, and fall asleep,) depression, and anxiety. (Tr. 308, 310). Kozlowski explained that she had trouble falling asleep and staying asleep and required daily naps. (Tr. 308-310). She opined that her impairments affected her ability to dress, bathe, care for her hair, shave, feed herself, use the toilet, lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, complete tasks, remember, concentrate, use her hands, and get along with others. (Tr. 309, 314). A third-party function report filled out by Kozlowski's husband, Jason Kozlowski, supported her claims. (Tr. 300-07).

It is against this factual backdrop that the ALJ conducted a hearing in Kozlowski's case on March 22, 2023. (Tr. 48). Kozlowski and a vocational expert ("VE") both testified at this hearing. (Tr. 48-85). Kozlowski testified about her many impairments, how they had affected her at past employers, and how their present confluence frustrated

8

certain treatment options that had helped her in the past. (Tr. 50-79). The VE identified Kozlowski's past work as similar to the DOT listing for an administrative clerk and answered hypothetical questions to assist the ALJ in determining what kinds of work someone with Kozlowski's alleged impairments might be capable of performing. (Tr. 81-82). The VE also answered questions from Kozlowski's attorney relating to the potential bilateral use of hands in the positions the VE identified as hypothetical fits for someone with Kozlowski's impairments. (Tr. 82-84).

Following this hearing, the ALJ issued a decision denying Kozlowski's application for benefits. (Tr. 25-46). In that decision, the ALJ first concluded that since Kozlowski's alleged onset of disability, she had not engaged in substantial gainful activity. (Tr. 30). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Kozlowski had the following severe impairments: degenerative disc disease, degenerative joint disease, fibromyalgia, obesity, sleep apnea, and major depressive disorder. (Tr. 30). At Step 3 the ALJ determined that these impairments did not meet or equal the severity of a listed impairment under the Commissioner's regulations. (Tr. 31).

Between Steps 3 and 4 the ALJ concluded that Kozlowski retained the following residual functional capacity to:

> "[P]erform light work as defined in 20 CFR 404.1567(b) except she can stand and/or walk four hours in an eight-hour workday. She can occasionally perform postural movements except she can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to temperature extremes, wetness, vibration, dangerous machinery, and unprotected heights. She has the mental capacity for work that is limited to simple and routine tasks; involving only simple, work-related decisions; and with few, if any, workplace changes."

(Tr. 33).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, the prior administrative medical findings, and Kozlowski's reported symptoms. (Tr. 33).

As to the medical opinions and administrative evidence of physical impairments, the ALJ found the opinions of Dr. Roman Bilynsky and Dr. Karel Keiter, both of whom found Kozlowski could perform light work, to be persuasive. The ALJ noted that those opinions were "supported by the longitudinal treatment notes" and were "consistent with [Kozlowski's] activities of daily living. (Tr. 37). The ALJ found the opinion of Dr.

10

Ahmed Kneifati to be unpersuasive, stating that some of Dr. Kneifati's suggested limitations were unsupported by the evidence of his own examination and inconsistent with Kozlowski's activities of daily living. (*Id.*).

As to Kozlowski's mental health impairments, the ALJ found the opinion of Richard W. Williams, PhD, and Edward A. Jonas, PhD, to be persuasive, as they were supported by the longitudinal treatment notes and consistent with Kozlowski's "lack of recent inpatient mental health treatment or referral to crisis intervention." (Tr. 39).  Finally, the ALJ noted the opinion of Dr. Stacey Trogner was partially persuasive, in that her findings were generally supported by the results of her own examination, but that her opinion understated some of Kozlowski's mental limitations and was inconsistent with evidence from her medical record.  (Tr. 38).

The ALJ also considered Kozlowski's reported symptoms.  (Tr. 34). He found that Kozlowski's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms [,]" but that her "statements concerning the intensity, persistence and limiting effects of

11

these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 34).

At Step 4, the ALJ found that Kozlowski could not perform her past work. (Tr. 39). At Step 5, the ALJ found Kozlowski could perform other jobs that existed in significant numbers in the national economy, such as electrical accessories assembler, small products assembler, and cashier II. (Tr. 40). Having reached these conclusions, the ALJ determined that Kozlowski had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (*Id.*).

This appeal followed. (Doc. 1). On appeal, Kozlowski challenges the adequacy of the ALJ's decision, arguing the ALJ's RFC findings violate Social Security Ruling 96-8p and were not supported by substantial evidence, and that errors in the ALJ's evaluation of Kozlowski's symptom evidence compel reversal. (Doc. 14 at 1). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision is supported by substantial evidence, and we will affirm the Commissioner's denial of this claim.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed

13

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No.

3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather

15

the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimtaely, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

16

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments,

17

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

18

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

19

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Legal Benchmarks for Assessing a Claimant's Obesity

The plaintiff also challenges the ALJ's assessment of her obesity. Under the agency's regulations, the ALJ must analyze the effects of a claimant's obesity on his or her ability to function. *See* SSR 02-01p, SSR 00-3p. This is particularly so when the ALJ identifies the claimant's obesity as a severe impairment at Step 2. *Diaz v. Comm'r of Soc. Sec.,* 577 F.3d 500, 504 (3d Cir. 2009). The Third Circuit has explained that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis" of a claimant's obesity. *Diaz,* 577 F.3d at 504 (citations omitted). Rather, so long as the ALJ "meaningfully consider[s] the effect of a claimant's obesity, individually and in combination with

20

her impairments, on her workplace function at step three and at every subsequent step[,]" *id.* at 504, a remand is not required. *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014).

## D. <u>Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms</u>

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir.2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir.

2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

## E. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Kozlowski asserts that the ALJ erred in the assessment of her obesity, as well as in his consideration of her subjective symptoms. However, as we will discuss below, the ALJ adequately considered the effects of Kozlowski's obesity on her ability to perform work within the RFC, as well as Kozlowski's reported symptoms.

Regarding Kozlowski's obesity, she argues that the ALJ failed to consider the potential interaction between obesity and her other impairments, and never addressed her fatigue and her need to lie down during the day. (Doc. 14 at 9-14). Indeed, Kozlowski testified that at her previous job, she took naps in her car during her lunch break. (Tr. 57-

24

58). Thus, she contends that the ALJ failed to consider the effects of her obesity on her ability to perform work-related activities.

At the outset, and as the Commissioner notes, Kozlowski did not assert obesity as a disabling impairment in her application for benefits. (*See* Tr. 110). However, it appears that the ALJ did, in fact, consider Kozlowski's obesity and found it to be a severe impairment. (Tr. 30). The ALJ also specifically noted that he considered SSR 19-2p regarding the claimant's obesity and any impact it has on her other impairments. (Tr. 31, 39). Regarding Kozlowski's allegations of fatigue and her need to lie down, the ALJ found that Kozlowski's complaints of pain and fatigue were inconsistent with her treatment records, which showed minimal treatment for her fibromyalgia pain and sleep apnea, and her activities of daily living, which included watching her grandchildren and doing household chores. (Tr. 35). Moreover, as we will discuss below, Kozlowski's alleged need to nap during the day came from her own testimony, which the ALJ considered but did not find entirely credible or consistent with the medical evidence. (Tr. 34). Accordingly, the

plaintiff's argument that the ALJ failed to consider the effects of her obesity is unavailing and does not require a remand.

Nor does the ALJ's consideration of Kozlowski's reported symptoms require a remand. Kozlowski argues that the ALJ's reliance on findings of "no acute distress," Kozlowski's noncompliance with treatment, her activities of daily living, and findings of a stable mood, constitutes error that requires remand. At the outset, the ALJ's reliance on findings of "no acute distress" was not, as the plaintiff argues, an improper independent medical finding made by the ALJ. Rather, the ALJ, when citing this evidence, cited to evidence in the medical record that included these findings made by Kozlowski's physicians. (*See* Tr. 35, 37-38). Thus, Kozlowski's contention that the ALJ improperly made these medical findings without support is not persuasive.

We reach a similar conclusion with respect to Kozlowski's arguments that the ALJ improperly relied on her treatment noncompliance, her activities of daily living, and findings of a stable mood. The ALJ is entitled to rely on evidence of noncompliance with treatment and activities of daily living in assessing a claimant's

credibility. *See Vega v. Comm'r of Soc. Sec.*, 358 F. App'x. 372, 375 (3d Cir. 2009) (reasoning that and ALJ's reliance on noncompliance with treatment to assess a claimant's credibility did not require a remand) (nonprecedential); *Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011) (finding no error where the ALJ considered the claimant's activities of daily living and found the claimant not entirely credible) (nonprecedential).  Here, the ALJ adequately explained and supported his findings that Kozlowski's instances of noncompliance with her appointments, as well as her activities of daily living, were not entirely consistent with the disabling limitations she alleged. (Tr. 39). Accordingly, we conclude that the ALJ's findings of credibility are supported by substantial evidence and do not require a remand.

Finally, Kozlowski contends that the ALJ improperly relied on findings in the record of a normal or improved mood and failed to consider her changes in medication.  The ALJ did consider findings in the record regarding the claimant's changes in medication, noting that Kozlowski had reported her medications were helping her mood improve.  (*See* Tr. 36).  Moreover, to the extent that Kozlowski is arguing that the ALJ

should have considered other specific evidence in the record that she believes supports a finding of disability, such an argument amounts to a request that we reweigh the evidence, which we may not do. *Chandler*, 667 F.3d at 359. Accordingly, we find no basis for a remand here.

Given the objective evidence in the record undermining the plaintiff's allegations regarding the severity of her impairments, the ALJ properly considered Kozlowski's symptoms but ultimately found that she was not as limited as she alleged. Thus, there is no basis for a remand on these grounds. Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case and will affirm the Commissioner's decision.

## IV.  Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: February 26, 2025